# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

TONY BRYANT,

Plaintiff,

v.                                                                    9:15-CV-258 (LEK/ATB)

T. BOUVIA, et al.,

Defendants.

TONY BRYANT, Plaintiff, *pro se*
CHRISTOPHER J. HUMMEL, Ass't Att'y Gen., for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## ORDER and REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c) by the Honorable Lawrence E. Kahn, United States District Judge.

In this civil rights action, plaintiff alleges that he was assaulted by defendants Bouvia, Blair, and Baxter in three separate incidents that occurred on November 28, 2012, while plaintiff was confined by the New York Department of Corrections and Community Supervision ("DOCCS") at Clinton Correctional Facility ("Clinton"). (Dkt. No. 1, Compl.). Plaintiff seeks substantial monetary relief. (Compl. at 5[1]).

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 29). Plaintiff has responded in opposition to the motion and has cross-moved for summary judgment in his favor. (Dkt. No. 33, 37).

---

[1] All page references in the record citations are to the pagination in the CM/ECF system, unless otherwise noted.

Plaintiff has also moved for appointment of counsel. (Dkt. No. 37, at 5). Defendants have responded in opposition to plaintiff's cross-motion. (Dkt. No. 38). For the following reasons, this court agrees with defendants Bouvia and Blair and will recommend granting their motions for summary judgment in full. This court further recommends granting defendant Baxter's motion for summary judgment in part, only with regard to the claim that he used excessive force against plaintiff in the facility hospital. This court also recommends denial of plaintiff's cross-motion for summary judgment. Finally, this court denies, without prejudice, plaintiff's request for appointment of counsel.

## DISCUSSION

## I.  Facts and Contentions[2]

In his complaint, plaintiff alleges three separate incidents of excessive force by Clinton correctional officers, that all occurred on November 28, 2012. (Compl. at 5-6). The first allegedly occurred in the facility mess hall, after plaintiff was engaged in a physical altercation with another inmate. (Dkt. No. 29-2, Hummel Decl., Ex. A, Deposition Transcript ("Dep.") at 14). Numerous correctional officers, including defendants Bouvia, Blair, and Baxter were at the scene. (Dkt. No. 29-1 ¶¶ 4-5). After

---

[2] As required under L.R. 7.1, defendants have filed a statement of material facts and notice to plaintiff of the requirement to file a response in accordance with the local rules. (Dkt. No. 41-9). Plaintiff has only submitted a counter-statement of material facts in support of his cross-motion that does not correspond to the defendants' statement. Because plaintiff has failed to respond in the manner required by L.R. 7.1(a)(3), the court may accept the facts in defendants' statement as true to the extent that they are supported by evidence in the record. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, in deference to plaintiff's pro se status, this court has opted to review the entire summary judgment record to determine the relevant facts.

being restrained by defendants Bouvia and Blair, plaintiff was escorted to the facility hospital in accordance with DOCCS policy. (*Id*. ¶ 7). Upon his arrival at the hospital, plaintiff was allegedly assaulted by the named defendants and a number of other unidentified correctional officers. (Dep. at 34-36). After being seen by medical staff, plaintiff was taken to the Clinton Special Housing Unit ("SHU"). (Dkt. No. 29-1 ¶¶ 8-9). Plaintiff alleges that he was assaulted a third time during this escort to SHU ("SHU escort"). (Compl. at 5).

All parties agree that force was used to restrain plaintiff in the mess hall. Otherwise, they offer significantly different versions of the events of November 28, 2012.

### A.     Plaintiff's Description of Use of Force

In his complaint, plaintiff alleged that, after he was assaulted by another inmate in the Clinton mess hall, defendant Bouvia and another correctional officer used excessive force against him, including punches to the face and stomach. (Compl. at 6). During his February 4, 2016 deposition, he expanded on his description of the incident. Plaintiff testified that he was standing in line in the mess hall when another inmate attempted to punch him from behind. (Dep. at 16). When plaintiff turned around to defend himself, a "pack" of correctional officers came at him. (*Id*. at 22). A correctional officer jumped on his back and put him in a chokehold. (*Id.* at 17, 19). Plaintiff first thought that he was being attacked by another inmate, and attempted to shake him off. (*Id*. at 18). Next, two correctional officers grabbed his arms and legs and tossed him face-first on to the floor. (*Id*. at 22). A correctional officer then

3

repeatedly jabbed his knee into plaintiff's back, and twisted plaintiff's arms up to the back of his neck before applying handcuffs. (Dep. at 22-23, 26). Plaintiff testified that he did not hear any instructions or orders from any correctional officers during this incident. (*Id*. at 23). He also testified that he did not know any of the correctional officers who responded to the incident, and he was unable to describe any of the officers who used force against him. (*Id*. at 23-25).

Plaintiff testified that after he was handcuffed, he was escorted to the Clinton facility hospital, also referred to as the infirmary. (*Id*. at 25). He was taken upstairs, into a "very small" room near the elevator. (*Id*. at 30). Plaintiff testified that upon entering this room, a correctional officer threw plaintiff into the door and against a wall. (*Id*. at 33-34). Plaintiff testified that multiple officers then took turns entering the small room and hitting plaintiff in the back, stomach, and groin area, in an assault that lasted for "a good half hour." (*Id*. at 38, 52). Plaintiff testified that he could not identify any of the officers involved, and he was not sure whether the officers who escorted him to the infirmary took part in the assault. (*Id*. at 34-35, 41).

Eventually, plaintiff was examined by a nurse, who cleaned a cut above his eye and gave him ibuprofen. (*Id*. at 53). Then, he was escorted to SHU by two correctional officers and a sergeant. (*Id*. at 58). Plaintiff has offered two strikingly different versions of the SHU escort. In his complaint, plaintiff states that he was assaulted "for another hour" while being taken from the facility hospital to SHU. (Compl. at 5). His motion papers expand on that description, and allege that "on my way to the SHU I was again [beaten] by staff and hit in my head, stomach and my

4

groin area."[3] (Dkt. No. 33-4, at 2).  However, during his deposition, plaintiff testified that the escorting officers only yelled at him and hit him two or three times in the shoulder while moving him down a stairwell toward SHU. (Dep. at 59-60).

## B.    Defendants' Description of Use of Force

In a November 28, 2012  memorandum prepared after the incident, defendant Bouvia stated that he had observed plaintiff "exchanging closed fist blows" with another inmate in the mess hall. (Dkt. No. 29-3, Bouvia Decl., Ex. A, at 5-6).  Bouvia recalled that he issued several direct orders to plaintiff to stop, and was ignored.  (*Id*. at 5).  In this memorandum, defendant Bouvia described his use of force as

> . . . using both my hands and pushing [plaintiff] in the chest up against the mess hall table.  At this time [plaintiff] pushed off the table, I then used my state issued baton [redacted] placing it across his chest and pulling [plaintiff] back and toward me. . . . I then pushed him to the wall maintaining my hold with my baton.  I gave him several direct orders to stop resisting.  [Plaintiff] did not comply at this time he spun to his right to try to get away from me. . . . I maintain[ed] my hold and was assisted by Officer M. Blair.  We forced [plaintiff] face first to the floor.  Once to the floor [plaintiff] continued to struggle . . . I used both of my hands to force [plaintiff's] left arm behind his back, once mechanical restraints were applied [plaintiff] followed staff direction and stopped resisting.

(*Id*. at  5-6).  In his declaration submitted in support of his summary judgment motion, defendant Bouvia stated that he had no further interaction with plaintiff that day. (Bouvia Decl. ¶ 10).

Defendant Blair also responded to the mess hall incident, and prepared a

---

[3] This description matches the allegations in plaintiff's December 12, 2012 administrative grievance, discussed *infra*.

subsequent memorandum. (Dkt. No. 29-4, Blair Decl., Ex. A, at 5). Blair wrote that he

> assisted officer Bouvia by wrapping both of my arms around [plaintiff's] waist. I forced [plaintiff to the] floor face first. [Plaintiff] continued to struggle. Using both hands I forced [plaintiff's] right arm to the middle of his back. At this time I applied mechanical restraints to [plaintiff's] wrists. I then assisted [plaintiff] to his feet. At this time control of the inmate was assumed by escorting officers.

(*Id*.). In his May 2, 2016 declaration, defendant Blair stated that he had no further interaction with plaintiff on November 28, 2012. (*Id*. ¶ 9).

In his May 2, 2016 declaration, defendant Baxter stated that defendants Bouvia and Blair had already restrained plaintiff by the time that he arrived at the mess hall. (Dkt. No. 29-5, Baxter Decl. ¶ 4). Defendant Baxter explained that DOCCS policy required a medical examination of an inmate following the use of force. (*Id*. ¶ 9). Defendant Baxter stated that he took physical custody of plaintiff and escorted him from the mess hall to the first floor of the Clinton hospital, under the supervision of an unnamed sergeant. (*Id*. ¶ 5). Defendant Baxter stated that after plaintiff was examined at the hospital, he escorted plaintiff from the hospital to a SHU holding cell. (*Id*. ¶ 7) Defendant Baxter also stated that he held plaintiff's elbow during these escorts, but denied any other use of physical force against plaintiff. (*Id*. ¶ 11).

## C.  Plaintiff's Identification of Defendants

Plaintiff has readily admitted that he had difficulty identifying the correctional officers who allegedly assaulted him, and could not offer a reliable description of any of them. (Dep. at 24-25, 29, 34, 39, 41, 61-62). He did not identify any of the officers

by name in his grievance. (Dkt. No. 29-6, Hale Decl. at 11). He named defendant

Bouvia in his original complaint, along with two John Doe defendants. (Compl. at 5-

6). After being afforded discovery, plaintiff relied upon the incident reports and

memoranda to name defendants Blair and Baxter in place of the Doe defendants. (Dkt.

No. 17, 18). Plaintiff contends that at least six other officers assaulted him on

November 28, 2012, but has not named any of them as defendants.[4] (Dkt. No. 17).

   Both parties agree that defendants Bouvia and Blair restrained plaintiff in the

mess hall, and plaintiff contends that both officers used excessive force in doing so.

(Dkt. No. 29-1, ¶ 5; Dep. at 26). Both parties likewise agree that defendant Baxter

escorted plaintiff from the mess hall to the facility hospital, and from the facility

hospital to SHU. (Dkt. No. 29-1, ¶ 7; Dkt. No. 33-1, ¶¶ 4-5). Plaintiff contends that

defendant Baxter participated in the group assault at the hospital and further assaulted

plaintiff during the SHU escort. (Dkt. No. 33-1, ¶ 7-8).

   Defendants Bouvia and Blair stated that they each received a medical evaluation

at the facility hospital after the mess hall incident, in accordance with Clinton

protocol. (Bouvia Decl. ¶ 9; Blair Decl. ¶ 8). They further stated that, after leaving the

mess hall, they had no further interaction with plaintiff that day. (Bouvia Decl. ¶ 10,

Blair Decl. ¶ 9). However, plaintiff contends that defendants Bouvia and Blair also

participated in the hospital assault, because their receipt of medical treatment put them

in the general proximity of the attack. (Dkt. No. 37 at 4-5). Despite his difficulty in

---

[4] Discovery is complete, and the deadline for amendment of the complaint or joinder of additional parties expired on January 11, 2016. (Dkt. No. 26). Therefore, plaintiff may not amend any of his claims to add additional defendants.

identifying his alleged attackers, plaintiff has never claimed that defendants Bouvia or Blair were part of the third alleged assault during the SHU escort, and this court finds no evidence in the summary judgment record to support such a theory.

## II.   <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all

ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,* 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

III.   **Exhaustion of Administrative Remedies**

A.   **Legal Standards**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil

rights action.  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements.  *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c).

Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, No. 15-3336-pr, 2016 WL 4572321, at *2 (2d Cir. Sept. 1, 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill* – availability and

estoppel – are still valid.  The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858.  Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 2016 WL 4572321 at *2.  An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60.  The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859.  The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.*  Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860.

## B.  Application

In this case, defendants argue that plaintiff failed to exhaust his administrative

remedies for two of his three excessive force claims, because there is no record that plaintiff filed any grievances alleging excessive force by Clinton staff in the mess hall or the facility hospital on November 28, 2012. (Dkt. No. 29-8, Def.'s Mem. at 9). Defendants have filed declarations by Jeffrey Hale, Assistant Director of the DOCCS Inmate Grievance Program ("IGP") and Christine M. Gregory, IGP Supervisor at Clinton in support of their argument. (Dkt. Nos. 29-6, Hale Decl.; 29-7, Gregory Decl.).

IGP Supervisor Gregory stated that facility records showed that plaintiff filed only one grievance while housed at Clinton. (Gregory Decl. ¶ 7). Assistant Director Hale states that his review of CORC records indicates that plaintiff exhausted the administrative process for this grievance by filing an appeal to CORC. (Hale Decl. ¶ 9). This grievance, included as an exhibit to the Hale declaration, reads in its entirety as follows:

> On the 28th day of Nov., 2012, while being escorted to SHU I was repeatedly beaten by the escort officers whereupon I was repeatedly kick[ed] and hit about the head, stomach & groin area. I am also being continuously denied medical treatment for my injuries which I received as a result of such assault. . . .
>
> I request that the officers be disciplined for their unprovoked assault upon me & I be given a complete medical evaluation and follow up treatment.

(Hale Decl. at 11).

At his deposition, plaintiff testified that he had only filed one grievance while at Clinton. (Dep. at 92). He also testified that this grievance did not mention the allegations of excessive force in the mess hall or the facility hospital. (*Id*. at 91). Still,

he argues that this grievance was sufficient to exhaust his administrative remedies as to all the allegations in his complaint.[5] (Dkt. No. 33-1, ¶ 18). This court disagrees.

Although a grievant is not required to identify the parties against whom he is grieving, he is required to "provide a specific description of the problem." *Espinal v. Goord*, 558 F.3d 119, 127 (2d Cir. 2009) (citing N.Y. Comp. Codes R. & Regs., tit. 7 § 701.7(a)(1)). The PLRA's exhaustion requirement requires that prison officials be afforded the time and opportunity to address a complaint internally. "In order to exhaust . . . inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson*, 380 F.3d at 697 (finding the PLRA exhaustion requirement was "not dissimilar to the rules of notice pleading"). Therefore, the question for the court here is "whether [the] plaintiff's grievance sufficiently alerted the prison officials that he was alleging some wrongdoing beyond that alleged against the individual or individuals specifically named in the grievance." *Peele v. Donah*, Case No. 9:15-CV-317 (GTS/TWD), 2016 WL 4400473, at *5 (N.D.N.Y. June 14, 2016) (citation omitted).

Upon review of the only grievance filed in connection with the events of November 28, 2012, this court concludes that plaintiff did not sufficiently alert Clinton officials to the alleged excessive use of force in the mess hall or the facility hospital. In his grievance, plaintiff only referenced excessive force that occurred

---

[5] Plaintiff advised the court that, at the time of the November 28, 2012 incidents, he fully understood the Clinton grievance process. (Dkt. No. 33-1, ¶ 17). He has not alleged that the grievance procedures were unavailable, or that he was otherwise prevented from filing a grievance as to all his claims.

"while being escorted to SHU." Therefore, even if Clinton officials were aware that correctional officers had used force against plaintiff in the mess hall, and that plaintiff had subsequently been evaluated at the facility hospital, plaintiff's grievance did nothing to prompt further investigation of these incidents. In addition, plaintiff's excessive force claims were only directed at the "escorting officers" who transported him to SHU. (Hale Decl. at 11). Clinton staff would therefore have no reason to investigate any alleged wrongdoing by defendants Bouvia and Blair, because prison records showed that neither was present during the SHU escort. (Bouvia Decl, Ex. A; Blair Decl., Ex. A). Thus, there is no evidence in the summary judgment record suggesting that Clinton officials had any information about possible wrongful conduct in the mess hall or the facility hospital that would prompt them to take appropriate responsive measures. *Johnson*, 380 F.3d at 697. Accordingly, defendants have satisfied their burden of showing a failure to exhaust as to plaintiff's claims of excessive force in the mess hall and the facility hospital, and this court recommends that defendants' motion for summary judgment be granted as to these claims. Because plaintiff has never alleged that defendants Bouvia and Blair were present during the SHU escort, this court further recommends that these two defendants be dismissed from this litigation. The only claim requiring additional analysis, then, is plaintiff's allegation that defendant Baxter used excessive force during the SHU escort.[6]

---

[6] Properly exhausted claims may proceed even though filed alongside unexhausted ones in a "mixed" complaint. *Jones v. Bock*, 549 U.S. 199, 221 (2007); *Ortiz v. McBride*, 380 F.3d 649, 662 (2d Cir. 2004).

## IV.  Excessive Force - SHU Escort

### A.  Legal Standards

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).  To sustain a claim of excessive force, a plaintiff must still establish the objective and subjective elements of an Eighth Amendment claim.  *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

In order to satisfy the objective element of the constitutional standard for excessive force, a defendant's conduct must be "'inconsistent with the contemporary standards of decency.'"  *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9.  The malicious use of force to cause harm constitutes a per se Eighth Amendment violation, regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 9-10 (citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  *Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir. 2000) (citation omitted*)*.

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  *Id*. at 21 (citation omitted).  The wantonness inquiry "turns on 'whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

## B. Application

The rule in determining whether to grant summary judgment is that credibility determinations, weighing evidence, and drawing inferences are functions for the jury, not the court. *Blake v. Race*, 487 F. Supp. 187, 202 (E.D.N.Y. 2007) (citing *Anderson v. Liberty Lobby*, 477 U.S. at 255). However, the Second Circuit has held that in the "rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," the court may appropriately rely on contrary evidence presented by the defendant(s) to conclude, at the summary judgment stage, that no reasonable jury would credit the plaintiff's testimony.[7] *Jeffreys*, 426 F.3d at 554-55. Defendant Baxter thus encourages the court to rely on the *Jeffreys* exception to dismiss the excessive force claim against him, citing numerous factual inconsistencies between plaintiff's grievance, complaint, deposition testimony, and

---

[7] In *Jeffreys*, the plaintiff's claim that he was thrown out a third-story window by police officers was vitiated by his three prior statements that he jumped. *Id.* at 552.

motion papers.[8] (Dkt. No. 29-8, at 12-19). Although this is a close case, and there is very limited evidence supporting plaintiff's contentions, this court cannot conclude that *no* rational jury could find that plaintiff was assaulted by defendant Baxter while being escorted to SHU.

Plaintiff has made numerous statements that raise questions about his credibility. For example, plaintiff testified at his deposition that he did not know what defendant Baxter looked like, and could not describe any of the escorting officers that he accused of assaulting him on the way to SHU. (Dep. at 58, 82, 102). In *Jeffreys*, the plaintiff could not identify any of the individuals who allegedly attacked him, and could not describe their ethnicities, physical features, facial hair, weight or clothing, casting doubt on the veracity of his allegations. *Jeffreys*, 426 F.3d at 552. Unlike *Jeffreys*, plaintiff in this case has consistently said that the SHU escort officers were the ones who assaulted him. (Hale Decl. at 11; Compl. at 6; Dkt. No. 33-4, at 2, ¶ 6). There is also no dispute that defendant Baxter was part of the SHU escort. (Baxter Decl. ¶ 7). Therefore, while plaintiff's incomplete description of his alleged attackers is certainly a factor that should be weighed by a jury, it does not entitle defendant Baxter to summary judgment as a matter of law.

Defendants also challenge plaintiff's credibility by pointing to numerous inconsistencies in his description of the alleged SHU escort assault. For example, plaintiff has offered varying descriptions of the amount of force that was used. In his

---

[8] Defendants Bouvia and Blair pointed out similar inconsistencies in the non-exhausted claims against them.

December 12, 2012 grievance, plaintiff alleged that the SHU escort repeatedly hit him in the head, stomach, and groin area. (Hale Decl. at 11). In his complaint, plaintiff described their actions as an hour-long assault. (Compl. at 5). However, plaintiff's deposition testimony contradicts these prior statements:

Q:    Did any other - - are you alleging that any other acts of excessive force occurred after you left the small infirmary room?

A:    Yeah. I mean, aside the little hitting – the hitting down the steps before you get to the cameras. Besides that, no.

Q:    What do you mean by the little hitting thing?

A:    Because I guess they got mad, because I told the nurse what happened. So, you know, they said, you know, profanity was used. Yo, what we tell you? What we tell you. I wasn't trying to hit them. So you don't want to listen, you don't want to hear me? All right, go start going downstairs. I guess wouldn't say severe, because it already happened, what was severe already happened, and the little hit that got nothing. I was already numb.

Q:    Where did they hit you?

A:    Same place, you know, like my shoulder . . . .

Q:    How many times did they hit you on your shoulder?

A:    Couple times going to the front. Couple times. About three times until we got - -

Q:    Did they strike you hard?

A:    No, not really. Not really.

Q:    Any other acts of excessive force you are alleging

occurred in this lawsuit after you left the small infirmary?

A:     After that, no.  Cameras there, like I said.

(Dep. at 59-61)

Defendant Baxter argues that plaintiff has admitted, under oath, that the force used by the SHU escort was *de minimis*.  *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997) (holding that inmate's claims that he was "bumped, grabbed, elbowed, and pushed" by prison officials insufficient to state Eighth Amendment claim); *James v. Phillips*, No. 05 Civ. 1539, 2008 WL 1700125 at *4 -*5 (S.D.N.Y. 2008) (finding *de minimis* use of force when prison guard shoved inmate into cell door, causing swelling of the inmate's chin).  However, plaintiff has revised his description of the SHU escort in his motion pleadings, to match the allegations in his grievance.  In a June 8, 2016 declaration submitted under penalty of perjury, plaintiff stated that ". . . on my way to the SHU I was again [beaten] by staff and hit in my head, stomach, and groin area." (Dkt. No. 33-4, at 2, ¶ 5).

Similarly, defendant Baxter points to inconsistencies in plaintiff's description of his injuries.  Although the lack of injury is not fatal to an excessive force claim, the extent and nature of an injury, if any, "'is probative of the amount and type of force actually used . . . and that in turn is likely to reflect on the reasonableness of that force[.]'" *Cunningham v. McCluskey*, No. 05 Civ. 10169, 2011 WL 2791336, at *7 (S.D.N.Y. June 22, 2011) (quoting *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009)); *Washington v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008) (finding *de minimis* injury to be probative of *de minimis* force), *Rep.*

*Rec. adopted,* 2011 WL 3478312 (S.D.N.Y. Aug. 8, 2011). In his grievance, plaintiff alleged that he required "a complete medical evaluation and follow-up treatment." (Hale Decl. at 11). At his deposition, plaintiff described his reliance on physical therapy to treat pain from a torn shoulder ligament, and his fear that his injuries would require surgery. (Dep. at 86). Plaintiff also testified that his physical condition had worsened since the alleged assault. (*Id*. at 84-86). However, plaintiff also testified that his injuries were primarily the result of the alleged incident in the infirmary, and not a result of the alleged beating during the SHU escort. (*Id*. at 86-87). Moreover, in a December 19, 2012 medical evaluation, plaintiff only complained of pain in his ankle and thumb. (Hale Decl. at 18).

Finally, defendant Baxter argues that the deposition is not the first time that plaintiff has changed his story regarding the events of November 28, 2012. Plaintiff was interviewed by Clinton staff after he filed his grievance. Interview notes describe plaintiff's admission that "he put in allegations against the escort officer kicking and hitting him because he knew that if he did he would be taken to be seen by medical and therefore receive the medical attention that he was seeking." (Hale Decl. at 14). The record also includes an Offender Injury Report dated December 19, 2012, that includes a staff notation that plaintiff had "been trying to get medical and didn't so made statement of staff abuse, but has since recanted it." (Hale Decl. at 18). This notation has a completed, but illegible, signature line labeled "Offender's signature." (*Id*.) Plaintiff has repeatedly insisted that he was not interviewed during the grievance process, and that he never recanted his allegations. (Hale Decl. at 13; Dep. at 96, 99,

101). Plaintiff also testified that he did not remember signing the form, and that the illegible "Offender's signature" did not match his handwriting. (Dep. at 98).

By citing the numerous inconsistent statements made by plaintiff, some of which were offered under oath, defendants' counsel has aptly demonstrated that plaintiff's only surviving excessive force claim will turn on issues of credibility. However, although plaintiff's inconsistencies provide "ammunition for cross-examination," they do not provide a basis for this court to recommend dismissal of his excessive force claim against defendant Baxter as a matter of law. *See Latouche v. Tompkins*, Case No. 9:09-CV-308 (NAM/RFT), 2011 WL 1103045, at *6 (N.D.N.Y. Mar. 23, 2011) (quoting *Fischl v. Armitage*, 128 F.3d 50, 54 (2d Cir. 1997)). This court cannot conclude that no rational jury could find in favor of plaintiff, and therefore, summary judgment for defendant Baxter is not appropriate. *See, e.g., Griffin v. Crippen*, 193 F.3d 89, 90-92 (2d Cir. 1999) (although plaintiff could offer only his own testimony and evidence of a bruised shin and a swollen left knee in support of his excessive force claim, dismissal was inappropriate because there were genuine issues of material fact concerning whether correction officers, whom plaintiff admittedly assaulted, maliciously used force against him after he was subdued and handcuffed); *Sims v. Artuz*, 103 Fed. App'x. 434, 437 (2d Cir. 2004) (plaintiff's allegations that he was kicked and punched while being removed from his cell after causing a disruption, corroborated in part by documented minor injuries[9] were

---

[9] The Second Circuit reversed the grant of summary judgment, which was based, in part, on the district judge's conclusion that the plaintiff "would have suffered 'far greater injury than actually occurred' if his account [of the incident] were accurate." *Id.*

sufficient to withstand a summary judgement motion); *Dallio v. Sanatamore*, 9:06-CV-1154 (GTS/DRH), 2010 WL 125774, at *9 (N.D.N.Y. Jan. 7, 2010) (because the court should not weigh the evidence or make credibility determinations, summary judgment would be denied where plaintiff alleged that he was repeatedly kicked and punched after he was subdued and restrained by correction officers, notwithstanding the relatively minor injuries the plaintiff suffered and the substantial contrary evidence proffered by the defendants); *Cicio v. Lamora*, 9:08-CV-431 (GLS/DEP), 2010 WL 1063875, at *7-8 (N.D.N.Y. Feb. 24, 2010) (denying summary judgment on plaintiff's claim that defendant correction officer hit inmate several times after he was subdued and helpless, despite "seemingly overwhelming" contradictory evidence, including the fact that plaintiff suffered only a minor bruise).

## V.    Appointment of Counsel

Plaintiff's cross-motion for summary judgment includes a request for appointment of counsel. (Dkt. No. 37, at 5). While the summary judgment motions in this case were pending, plaintiff also filed a stand-alone motion for appointment of counsel on July 21, 2016. (Dkt. No. 39). I denied that motion in a decision and order dated August 18, 2016, relying in part on plaintiff's demonstrated ability to effectively litigate this action at the summary judgment stage. (Dkt. No. 40). This court is unaware of any changed circumstances that would warrant appointing counsel at this time. Therefore, this court denies plaintiff's request for appointment of counsel, consistent with the reasoning in my prior order. As explained in that order, I will revisit this determination if this action should proceed to trial.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 29) be **GRANTED in part,** and the following of plaintiff's claims be dismissed:

1.      All claims against defendant Bouvia;

2.      All claims against defendant Blair;

3.      Eighth Amendment claims against defendant Baxter only as to the allegations of excessive force in the facility hospital; and it is further

**RECOMMENDED**, that defendant Baxter's motion for summary judgment as to the Eighth Amendment claims of excessive force during the SHU escort be **DENIED**; and it is further

**RECOMMENDED**, that plaintiff's cross-motion for summary judgment (Dkt. No. 33) be **DENIED**, and it is further

**ORDERED**, that plaintiff's request for appointment of counsel (Dkt. No. 37) is denied without prejudice to renew, consistent with my prior order dated August 18, 2016. (Dkt. No. 40).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**Dated:**     October 3, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge