UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

TONY BRYANT,

                                                                                                   No. 9:15-CV-258 (ATB)

              Plaintiff,

     v.

CORRECTIONAL OFFICER T. BAXTER,

              Defendant.

_____

ELIZABETH A. CONNOLLY, ESQ., for Plaintiff
CHRISTOPHER J. HUMMEL, Assistant Attorney General, for Defendant

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

**MEMORANDUM-DECISION AND ORDER**

In this civil rights action, plaintiff alleged that he was assaulted by defendants Bouvia, Blair, and Baxter[1] in three separate incidents that occurred on November 28, 2012, while plaintiff was confined by the New York Department of Corrections and Community Supervision ("DOCCS") at Clinton Correctional Facility ("Clinton"). (Compl., Dkt. No. 1). Plaintiff had pursued a grievance only respect to the last of these alleged incidents, which occurred while he was being escorted, by defendant Baxter, from the infirmary to the Special Housing Unit ("SHU"), following an altercation between plaintiff and another inmate in the mess hall, and an examination

---

[1] Defendant Travis Baxter is not related to this court.

of plaintiff by medical staff in the infirmary. In January 2017, the court dismissed, for failure to exhaust administrative remedies, plaintiff's claims with respect to alleged assaults by correction officers earlier on November 28th–one in the mess hall, and the second in a "frisk room" in the infirmary before plaintiff was seen by medical staff. (*See* Defendants' Summary Judgment Motion (Dkt. No. 29), 10/3/2016 Report-Recommendation (Dkt. No. 41), 1/27/2017 Decision and Order (Dkt. No. 46)).

On February 27, 2017, pro bono counsel was first appointed to represent plaintiff at the anticipated trial on the surviving Eighth Amendment excessive force claim against defendant Baxter, relating to plaintiff's escort from the infirmary to the SHU. (*See* Dkt. Nos. 49-51, 54). On April 10, 2018, with the consent of the parties, this matter was referred to me for all further proceedings, including the entry of final judgment, by the Hon. Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Dkt. No. 67). After both parties waived a jury trial, this court conducted a bench trial in Albany, New York, on May 15 and 16, 2018. Having considered all of the testimony and evidence admitted at trial, the court finds in favor of defendant Baxter on the remaining claim against him. The following constitutes the court's supporting findings of fact and conclusions of law, as required by Fed. R. Civ. P. 52.

I.   **FINDINGS OF FACT**

   A.   **Background**

The proof at the bench trial focused on the one surviving excessive force claim, arising from defendant Baxter's alleged assault of plaintiff on November 28, 2012,

during the escort of plaintiff from the infirmary to the SHU at Clinton. However, some evidence relating to the two earlier incidents involving plaintiff on November 28th was introduced to provide context and/or to support or contradict the differing accounts of the parties relating to the alleged assault of plaintiff during the escort to SHU.[2]

Plaintiff became involved in a physical altercation with another inmate in the Clinton mess hall around noon on November 28, 2012.[3] Although there was considerable dispute about the nature and the extent of force used, several correction officers applied force to plaintiff in breaking up the fight, overcoming his initial resistance, and ultimately restraining him. (Trial Transcript ("TT.") at 6-7, 67-70, 87-91; Ex. D-4[4]). Officer Thomas Bouvier suffered injuries as a result of the intervention, including severe pain in his left shoulder area. (Ex. D-4 at 2).

Plaintiff, in mechanical restraints, was then escorted to the infirmary by defendant Baxter and then-Sargent Furnia. (TT. 7-9, 100-01, 103-05, 124-27; Exs. D-6, D-7, D-12). Plaintiff alleges he was brutally assaulted by several correction officers

---

[2] This court's October 3, 2016 Report-Recommendation, relating to defendants' summary judgment motion, summarizes the differing narratives of the parties concerning the two earlier incidents on November 28th. (Dkt. No. 41 at 2-6).

[3] Plaintiff testified that he was not injured as a result of the incident in the mess hall because the fight with the other inmate was broken up quickly, before they had any physical contact. (TT. 11). Correction Officer Thomas Bouvia, who intervened in the altercation, testified that plaintiff and the other inmate traded closed fist punches to the torso and face, and that some of these blows landed. (TT. 88).

[4] Plaintiff and the defendant each submitted a set of exhibits that consisted of essentially the same documents. The parties agreed to use only the defense exhibits, with brief supplementation of a few additional documents that were part of the plaintiff's exhibits.

3

in the frisk room in the infirmary, which the named, accused officers have denied. (10/16/2016 Rep't-Rec. at 3-4, 6; TT. 108, 129-30; Exs. D-6, D-7, D-12). Plaintiff was ultimately examined and treated in the infirmary by Nurse Devlin-Varin, who tended to plaintiff's injuries, and photographs were taken to document plaintiff's physical condition. (TT. 10-11, 105-06, 140-44, 147; Exs. D-8, D-14 (Pl.'s Dep.), Ex. A). Right after this examination, plaintiff was escorted from the infirmary to the SHU holding cell. (TT. 12, 14-16, 101, 107-08, 127-29).

### B. Plaintiff's Version of Disputed Facts

Plaintiff testified that, on November 28th, while handcuffed from behind, he was escorted through the infirmary to the SHU holding pen by three officers, including defendant Baxter, and a sargent. (TT. 16). Plaintiff stated that he was disrespectful to the escort staff and was complaining to the sargent about the assault he suffered earlier in the frisk room in the infirmary. (TT. 12, 16-17). While in a hallway in the infirmary, plaintiff claimed that he was hit from behind by the escort officers, in the groin, around his stomach, and in the back of his head. (TT. 17). He was then thrown into the door at the top of a stairway to the basement of the infirmary, hitting his whole right side and his shoulder, and hearing "a snapping sound." (T. 17-19). Plaintiff looked behind him and saw that defendant Baxter was the officer who steered him into the door. (TT. 19). Plaintiff testified that the officers continued to hit him until he went through another door at the bottom of the stairs, by which point there were surveillance cameras that would record the officers' conduct. (TT. 19-20, 21).

Plaintiff stated that, the day after this alleged assault, he felt excruciating pain in

4

his shoulder and back and could not get out of bed or use his right hand to write. (TT. 24). After a few days, he was able to recuperate a little bit, and submitted a sick call notice. (TT. 24, 25). At some point in December, plaintiff was finally granted a medical callout and was taken to see a nurse in the infirmary. (TT. 25-27). After speaking privately with the escort officer, the nurse accused plaintiff of making "fake accusations," and did not want to listen when he complained about previously getting "thrown into the wall" by correction officers. (TT. 27-28). The nurse told plaintiff to sign a piece of paper, which he refused to sign. (TT. 28). During the trial, plaintiff was shown an Offender Injury Report dated December 19, 2012, on which he purportedly signed a statement "recant[ing]" a prior allegation of staff abuse. (Ex. D-11). Plaintiff he denied signing the document or otherwise recanting his allegation of being assaulted on November 28th. (TT. 32-33, 34-35).

Plaintiff was taken to see a Dr. Lee later on December 19th, and allegedly complained of great pain in his shoulder and back and reduced range of motion. (TT. 35-36). Plaintiff testified about subsequent treatment of his shoulder in other DOCCS facilities, including physical therapy. He stated that the damage to his shoulder was the only lasting injury from the alleged assault on November 28th. (TT. 36-40).

### C. Defendant's Version of Disputed Facts

Defendant Travis Baxter and now-Lieutenant Raymond Furnia testified that they were the officers involved in escorting plaintiff on November 28, 2012 from the Clinton mess hall to the infirmary. After plaintiff was examined by the nurse and photographed, the same officers escorted plaintiff from the infirmary to the SHU.

5

(TT. 103-108, 124-130; Exs. D-6, D-7, D-12). Relying primarily on their contemporaneous reports from 2012, defendant Baxter and Lt. Furnia testified that no officer struck or hit plaintiff at any time between the time he left the mess hall and the time he was placed in the holding cell of the SHU. (TT. 108, 129-30). Although defendant Baxter testified that he had no current recollection of his escort of the plaintiff on November 28, 2012, he specifically denied striking plaintiff in the stomach, groin, or head, or pushing plaintiff into a doorway in the infirmary area, and stated "I would have remembered something like that." (TT. 130-31).

In challenging the credibility of plaintiff's trial testimony, defense counsel emphasized that plaintiff made numerous prior inconsistent statements about the alleged assaults on November 28, 2012, and documented that the contemporaneous DOCCS medical records indicate that plaintiff did not complain of any injury to his shoulder in the days or weeks following the relevant incidents. (TT. 220-26).

When Nurse Devlin-Varin examined plaintiff in the infirmary on November 28th (before plaintiff was escorted to SHU), she observed and treated a cut over plaintiff's right eye and a superficial abrasion on his right shoulder. (TT. 142-143; Exs. D-1 at 017;[5] D-8, D-14 (Pl.'s Dep.), Ex. A). Plaintiff did not complain to Nurse Devlin-Varin of shoulder pain. (TT. 144). Plaintiff was seen after his escort to the SHU by Nurse Ronald Dumont, who primarily questioned plaintiff about whether he required any medications. (TT. 160-61, Ex. D-1 at 017). Nurse Dumont testified that plaintiff did

---

[5] Defendant's Exhibit 1 consists of multiple pages of plaintiff's DOCCS medical records, with page numbers in the lower right hand corner.

6

not complaint of any injuries not reflected in Nurse Devlin-Varin's Offender Injury Report, and did not complain of pain to his right shoulder, or Nurse Dumont would have reported that in plaintiff's Ambulatory Health Record ("AHR"). (TT. 162, 164). Plaintiff was seen by Nurse Devlin-Varin on December 2nd and Nurse Dumont on December 3rd, complaining of pain in his right thumb and right ankle. (TT. 148-51,165-66, Ex. D-1 at 018). Plaintiff did not report shoulder pain to either nurse on December 2nd or 3rd. (TT. 151-52, 167).

In a grievance dated December 12, 2012, plaintiff alleged that, during his escort from the infirmary to the SHU on November 28, 2012 he had been beaten by officers in the head, stomach and groin area, and that he was being denied medical care. (D-15). When confronted with his grievance during trial, plaintiff conceded that the grievance did not mention that he had been thrown into a door or suffered from shoulder pain. (TT. 47, 48-49).

After plaintiff filed his grievance, he was granted a medical callout on December 19, 2012, and saw Nurse Lynne Kahn and then Dr. Lee. Nurse Kahn testified that plaintiff "stated that he had an ankle and thumb injury and he had been trying to get to medical and he wasn't able to get up. So he made a statement that staff abused him, which he recanted at that time." (TT. 188, 191, 192). Nurse Kahn identified an Offender Injury Report she prepared. (TT. 187-88; Ex. D-11). She testified that plaintiff signed the "Offender's statement" portion of that form, indicating that he was recanting his prior allegation of staff abuse, which he said he made only to get more prompt medical attention. (TT. 187-89, 191-92, 193-94; Ex. D-

7

1 at 019).[6] Nurse Kahn testified that, on December 19th, plaintiff did not complain of shoulder pain. (TT. 191, 195-96). Nurse Kahn read Dr. Lee's notations in plaintiff's AHR for December 19th, which also did not mention any complaints of shoulder pain. (TT. 194).

In January 2014, plaintiff submitted a claim to the New York Court of Claims regarding the force used against him by corrections officers at Clinton on November 28, 2012. (Ex. D-16). In that complaint, he alleged that, while he was in the infirmary, before being taken to SHU, officers lifted him up and threw him into a concrete wall, striking, *inter alia*, his shoulder. (*Id.*) During the trial, plaintiff tacitly acknowledged that the Court of Claims complaint did not make clear that he was subsequently thrown into a door on the way out of the infirmary or otherwise assaulted, after he was examined by the nurse. (TT. 53-54; Ex. D-16 at 2). Plaintiff testified "If I wasn't clear [t]here, I'm being clear now. That's what happened when I was being escorted to the SHU." (TT. 54).[7]

Plaintiff's original complaint in this action similarly described the assault in the frisk room in the infirmary, including an allegation that he was lifted up and thrown into a concrete wall, striking his shoulder and head. (Ex. D-17 at 5). Plaintiff acknowledged at trial that the complaint did not refer to being thrown into a door during his escort to the SHU. (TT. 58).

---

[6] During the trial, after being confronted with his prior deposition testimony (at 95-97, Ex. D-14), plaintiff admitted signing something for the nurse in December 2012, but stated that he did not see what he was signing. (TT. 49-51).

[7] Plaintiff testified that he ultimately dismissed his Court of Claims action. (TT. 55).

8

Plaintiff acknowledged statements from his deposition that appeared to be inconsistent with his trial testimony about the conduct of defendant Baxter during the escort through the infirmary to the SHU, after plaintiff was examined by the nurse. (TT. 58-67). Plaintiff kept insisting, however, that he was being clearer, and more specific, in his trial testimony, about what happened while he was still in the infirmary. (*See, e.g.*, TT. 59-60, 65, 66).

Plaintiff's deposition clearly stated that his shoulder was injured in the frisk room in the infirmary, not while he was being escorted to the SHU:

> Q. So this happened, your right shoulder was injured in the mess hall?
> A. No. Escorted, when I got to the infirmary.
> Q. When you were shoved into the wall in the small --
> A. Yes. Yes.
> Q. Just let me finish. I am trying to make a clear record.
> A. Okay.
> Q. When you were brought into the small infirmary room and shoved into the wall, that's when your shoulder was injured?
> A. Yes, sir.
> Q. Okay. And at that time you heard a snapping sound?
> A. Yes.

(Pl.'s Dep. at 48-49).[8]  Plaintiff acknowledged at trial that, on page 49 of his deposition, he was talking about being thrown against a wall in the small infirmary room, where he was photographed. (TT. 67).

Plaintiff's testimony at this deposition also indicated that, after he was examined by the nurse, correction officers used only minimal force against him, contrary to his trial testimony:

---

[8] During his deposition, plaintiff testified that he was thrown by officers both into a door and into a wall in the frisk room. (Pl.'s Dep. at 31-32, 33-34, 44-45).

9

> Q. Did any other -- are you alleging that any other acts of excessive force occurred after you left the small infirmary room?
> A. Yeah. I mean, aside the little hitting -- the hitting thing down the steps before you get to the cameras. Besides that, no.
> Q. What do you mean by the little hitting thing?
> A. . . . I guess wouldn't say severe, because it already happened, what was severe already happened, and the little hit that got nothing. I was already numb.
> Q. Where did they hit you?
> A. Same place, you know, like my shoulder. They got me --
> Q. Your right shoulder?
> A. Going down the stairs, you know, shut up, shut up. I am like it don't matter no more. I am numb. . . .
> Q. How many times did they hit you on your shoulder?
> A. Couple times going to the front. Couple times. About three times until we got --
> Q. Did they strike you hard?
> A. No, not really. Not really.
> Q. Any other acts of excessive force you are alleging occurred in this lawsuit after you left the small infirmary?
> A. After that, no. . . .

(Pl.'s Dep. at 57-59). During his deposition, plaintiff admitted that he could not describe defendant Baxter or identify whether he was one of the officers that assaulted him during the escort. Plaintiff added Officer Baxter as a defendant when he was provided with Officer Baxter's prior written statement (presumably Ex. D-12), in discovery. (Pl.'s Dep. at 80-81, 100).

### D. Court's Findings of Fact

After considering all of the testimony, the credibility of the witnesses, and the exhibits and other evidence, this court finds that the plaintiff has not established, by a preponderance of the credible evidence, his version of the critical disputed facts. Given the complete lack of corroboration of plaintiff's story, and the inconsistencies

between his trial testimony and various prior statements, the court finds there is insufficient evidence to support plaintiff's claim that he was assaulted by defendant Baxter on November 28, 2012, during plaintiff's escort from the infirmary to the SHU.

As discussed above, the medical examinations of plaintiff by four different DOCCS providers in November and December 2018 documented minor injuries inconsistent with plaintiff's account of severe and prolonged assaults by correction officers, and his claim of a serious injury to his right shoulder. While the court has considered plaintiff's allegations that the DOCCS medical providers at Clinton minimized his injuries in their reports to protect corrections staff, it is implausible that the providers would document plaintiff's complaints, *e.g.*, of injuries to his ankle and thumb, but ignore complaints about an injury to his shoulder. Plaintiff injuries, as documented in the medical records, are consistent with the undisputed facts–that plaintiff was in a fight with a prior inmate and he was forcibly restrained by correction officers in the mess hall when he resisted their efforts to bring him under control. The fact that Officer Bouvier suffered injuries, including severe shoulder pain, as a result of his struggles with the plaintiff in the mess hall, reinforce the plausible connection between plaintiff's documented injuries and the events preceding his escort to the infirmary and the SHU.

Even if plaintiff's overall claim that correction officers used excessive force against him on November 28, 2012 was more credible, his inconsistent statements about when and how he was injured make it clear that he has altered his story about the time and place of certain events. It is transparent that plaintiff has done so in order

11

to overcome the fact that his claims with respect to the first two incidents on November 28th, before he was examined by the nurse and then escorted through the infirmary to the SHU, were dismissed for failure to exhaust. In his deposition (at 31-35, 48-49), plaintiff identified the alleged assault in the frisk room in the infirmary, before he was examined by the nurse, as the incident during which he was thrown into a door and/or wall, causing the injury to his shoulder. Plaintiff's prior narratives about what happened during the escort to SHU have veered between kicks and blows to his head, stomach, and groin (Ex. D-15 (Pl.'s Grievance)); essentially no assaultive conduct (Ex. D-16 (Court of Claims Complaint); and de minimis hits to his shoulder (Pl.'s Dep. at 57-59). Until he testified at trial, plaintiff never alleged that his shoulder was severely injured because he was thrown into a doorway by defendant Baxter during the escort through the infirmary to the SHU, after plaintiff was examined by the nurse.

## II. CONCLUSIONS OF LAW

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency.'" *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9. "[T]he malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*,

344 F.3d 282, 291 (2d Cir. 2003).

Based on the factual findings outlined above, the court concludes that the plaintiff did not sustain his burden of proving, by a preponderance of the credible evidence that, on November 28, 2012, he was subjected to any excessive or malicious application of force by defendant Baxter during the escort through the infirmary to the Clinton SHU. Nor has plaintiff established that defendant Baxter violated plaintiff's Eighth Amendment rights by a wanton or sadistic use of force during the SHU escort. Given plaintiff's numerous inconsistent statements about what happened during the SHU escort, and the complete lack of corroboration of his most recent version of events reflected in his trial testimony, the court must find in favor of defendant Baxter on the surviving excessive claim brought against him. Accordingly, it is hereby

**ORDERED**, that the remaining Eighth Amendment Excessive force claim against defendant Travis Baxter in the complaint is dismissed with prejudice, and it is further

**ORDERED** that, based on this Order; the June 8, 2015 Decision and Order of Senior District Judge Lawrence E. Kahn (Dkt. No. 9); and the January 27, 2017 Decision and Order of Judge Kahn (Dkt. No. 46), the Clerk of the Court is directed to enter judgment in favor of all defendants on all claims and dismiss plaintiff's complaint, in its entirety, with prejudice.

Dated: July 24, 2018

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge